UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ALYSSA M.,                                                    Case No. 6:24-cv-01520-AR

                Plaintiff,                              OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

       In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Alyssa M. (last name omitted for privacy) challenges the Administrative Law

Judge's findings regarding step two, their subjective symptom testimony, the medical opinion

evidence, and the lay witness testimony. Because the court finds that the ALJ did not err, the

Commissioner's decision is affirmed.

**ALJ'S DECISION**

Plaintiff applied for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI) on January 19, 2021, alleging disability beginning on June 1, 2012. (Tr. 62-63, 82-83.) Their claims were initially denied and on reconsideration. (Tr. 80-81, 101, 110, 120.) Plaintiff then filed for a hearing that was held before the ALJ on August 24, 2023. (Tr. 37.) The Appeals Council denied review, making the ALJ's decision final.

In denying plaintiff's applications, the ALJ followed the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 20-21.) At step two, the ALJ determined that they had the following severe impairments: migraine headache disorder, obesity, left patellofemoral syndrome, major depressive disorder, and generalized anxiety disorder. (Tr. 21.) At step three, the ALJ determined that their impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 22.) As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the RFC to perform light work with some limitations. (Tr. 24.) At step four, the ALJ determined that plaintiff has no past relevant work. (Tr. 29.) Considering their age, education, work experience, and RFC, the ALJ found at step five that jobs existed in significant numbers in the national economy that plaintiff could perform, including such representative occupations as electronics worker, garment sorter, and "stocker checker, apparel[.]" (Tr. 30.)

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

**DISCUSSION**

A.    ***Step Two***

At step two, the ALJ determines the medical severity of a physical or mental impairment, and if the claimant does not have any medically severe impairments, he or she is not disabled. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. § 404.1520(a)(4)(ii); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities," 20 C.F.R. § 404.1521(a), and not severe if the "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling (SSR) 85-28, *available at* 1985 WL 56856, at *3 (Jan. 1, 1985). Even if an impairment is not severe, the ALJ must still consider its limiting effect when formulating the claimant's RFC. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014); 20 C.F.R. § 404.1545(a)(2). Generally, the step two threshold is low;

the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless

claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

Plaintiff argues that the ALJ committed reversible legal error by concluding that their

fibromyalgia was not medically determinable at step two. Fibromyalgia can be established as

medically determinable under either of two sets of criteria, enumerated in Social Security Ruling

12-2P, 2012 WL 3104869 (July 25, 2012); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996,

1005 (9th Cir. 2015). First, based on the "1990 ACR Criteria for the Classification

of Fibromyalgia," this impairment is medically determinable if: (1) the claimant has a "history of

widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body,

both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest,

thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain

may fluctuate in intensity and may not always be present."; (2) "[a]t least 11 positive tender

points on physical examination"; and (3) there is "[e]vidence that other disorders that could

cause the symptoms or signs were excluded." SSR 12-2P, 2012 WL 3104869, at *2-3.   Second,

based on the "2010 ACR Preliminary Diagnostic Criteria," fibromyalgia  is medically

determinable if: (1) the claimant has a "history of widespread pain," as provided in the 1990

ACR criteria; (2) the claimant has "[r]epeated manifestations of six or more symptoms, signs, or

co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems

('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome";

and (3) there is "[e]vidence that other disorders that could cause these repeated manifestations of

symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

In the decision, the ALJ determined that plaintiff's fibromyalgia was not medically determinable because the evidence failed to satisfy either set of criteria and because their medical records did not reveal a fibromyalgia diagnosis. Plaintiff argues that they received a diagnosis from Diman Raj Lamichhane M.D., in May 2023. As the ALJ explained, however, this was not a formal diagnosis and other conditions were not excluded. (Tr. 22, citing Tr. 1197-1201.) The treatment note discussed by the ALJ indicates that Dr. Lamichhane stated "[plaintiff's] findings are suggestive of fibromyalgia. I will request records from PCP's office. If not completed, I will check for thyroid stimulating hormone and creatinine kinase." (Tr. 1201.) Dr. Lamichhane also noted that "[plaintiff] will benefit from a genetic test for vascular type Ehler-Danlos." (Tr. 1201.)

At the hearing, the ALJ repeatedly asked plaintiff's attorney where the diagnosis for fibromyalgia was in the record, yet plaintiff's attorney was unable to pinpoint an official diagnosis. (Tr. 45-51.) Their attorney explained an array of plaintiff's symptoms and abnormal exams from plaintiff's primary care doctor found at Exhibit 4F, but did not identify an official diagnosis. (Tr. 45-51.) Further, plaintiff testified that no follow-up with Dr. Lamichhane regarding additional evaluation for fibromyalgia had occurred. (Tr. 51.)

Also argued by plaintiff is that the ALJ erred by not considering whether plaintiff satisfied the 2010 criteria. But that is not error. Under SSR 12-2P, a *physician* may diagnose fibromyalgia under either the 1990 or the 2010 criteria, provided the physician has ruled out other possible causes of a claimant's pain. *See Ford*, 950 F.3d at 1155 n.7 (citing SSR 12-2P, 2012 WL 3104869, at *2-3) (emphasis added). SSR 12-2P provides that fibromyalgia is a medically determinable impairment "if the physician diagnosed [fibromyalgia] and provides the

evidence" that meets either criteria. The ALJ is not required to independently determine whether the ACR criteria are satisfied.

The case that plaintiff relies on, *Swales v. Saul*, 852 F. App'x 253 (9th Cir. 2021), is distinguishable. In *Swales*, the court held the ALJ erred in failing to find Swales' fibromyalgia medically determinable because the "record includes documentation of an *examining physician* finding that Swales met the diagnostic criteria for fibromyalgia" and evidence that the treating nurse practitioner acknowledged that diagnosis, and that myriad other possible causes for the pain had been ruled out. *Id.* at 255 (emphasis added). The court also concluded that the step-two error was harmful because the ALJ discredited Swales's subjective symptom testimony and the nurse practitioner's opinion based on a perceived inconsistency between Swales' subjective complaints and objective medical evidence related to his fibromyalgia. *Id.* Unlike *Swales*, plaintiff has not identified a diagnosis of fibromyalgia by a physician under the diagnostic criteria here. Consequently, the ALJ's finding that plaintiff's fibromyalgia was not medically determinable is supported by substantial evidence.

**B.**    ***Plaintiff's Symptom Testimony***

Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for disregarding their subjective symptom testimony. (Pl.'s Br. at 11-17.) Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d

1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

In plaintiff's application for disability benefits, they wrote that they cannot engage in full-time, competitive employment because of their physical and mental health symptoms. In their function report, plaintiff explained that they had to reduce the number of hours worked in their past job "because even part-time [work] ha[d] pushed [their] anxiety to the limits, causing multiple panic attacks a day." (Tr. 291.) Interactions with others at work triggered them, and they struggled to communicate with managers. (Tr. 291.) Their mental impairments affected their ability to maintain a regular sleep schedule and caused an array of executive functioning issues that hindered them from maintaining their personal hygiene. (Tr. 292.) Plaintiff also explained that they need reminders to take their medications and to maintain their personal hygiene and grooming needs, and that they experience "brain fog," do not drive, and rarely leave home. (Tr. 293-94, 269, 318, 320.) And spending time with family and authority figures causes anxiety, which means that they only go to places where they know the other people present, and do not have hobbies. (Tr. 295-96, 321.) Their chronic migraines prevent them from working "for up to a

week at a time." (Tr. 291.) When they have a migraine, they also experience nausea, pain, aura, vomiting, with sensitivity to sound, smells, and light. (Tr. 291, 217.) Plaintiff could do household chores when they did not have a migraine, but they needed frequent breaks to avoid triggering a migraine. (Tr. 294.)

Plaintiff has a long history of migraines. At the hearing, plaintiff testified that they were taking Duloxetine to treat fibromyalgia for the past six months, and that they have taken medication for fibromyalgia since they were 18 years old. (Tr. 51-52.) Plaintiff described that in 2009, their migraines lasted a day and a half, and were treated with Excedrin. (Tr. 52.) In 2014, their migraines began to increase in frequency—two to three times a week—and became "significantly longer each time"—they lasted about a day and a half. (Tr. 52-53.)

As to their mental health, plaintiff testified that they spent at least a week in bed each month due to depression, and that they treat their depression with antidepressants and therapy. (Tr. 53.) Two to three panic attacks a month caused them to shake, twitch, hyperventilate, and cry. (Tr. 55) When the ALJ questioned plaintiff about their gap in medical treatment from 2009 to 2014, plaintiff replied that they did not have medical insurance during that time. (Tr. 56.)

The ALJ discounted plaintiff's subjective symptom testimony because: (1) their statements regarding their work history were inconsistent, (2) their activities of daily living are inconsistent with their claimed limitations, (3) their treatment history shows that symptoms improved with treatment, and (4) their medical records show largely normal objective findings during medical appointments. Plaintiff contends that the ALJ's conclusions are not supported by substantial evidence. (Pl.'s Br. at 11-17.) The court disagrees, and addresses each of the ALJ's rationales in turn.

***Inconsistent Statements Regarding Work History.*** The ALJ concluded that the

"inconsistent statements from [plaintiff] and others concerning why [their] work activity

ended . . . suggest [plaintiff] is able to sustain work activity." (Tr. 27.) Plaintiff reported working

from April 2019 to December 2019 and a treatment note from December 2019 shows that

plaintiff described their work as "more for supplementary income," and the ALJ stated this

"suggest[s] there were reasons other than disability for limiting work activity." (Tr. 27, citing Tr.

424.)) The ALJ also pointed out that in March 2022, plaintiff was asked to describe how they

were the last time they worked, and plaintiff stated that they were "doing really well managing

day to day anxieties and depression, but doing so well kept getting me promoted and more

projects" which became overwhelming. (Tr. 27, citing Tr. 725-26.) The ALJ reasonably could

find those statements inconsistent with plaintiff's reports that they reduced their hours in past

jobs "because even a part-time job ha[d] pushed [their] anxiety to the limits, causing multiple

panic attacks a day." Tr. 291. And the ALJ discussed that plaintiff's former employer submitted

a letter stating that they worked part-time from July 19, 2010, through September 17, 2012, and

from July 14, 2017, through January 24, 2018, and that plaintiff was in good standing but did not

return after requesting a medical leave of absence in January 2018. (Tr. 27, citing Tr. 238.) That

letter also states that plaintiff had no attendance issues, "no documentation of infractions of any

sort," and that plaintiff's "quality, attendance, and production were all satisfactory." (Tr. 27,

citing Tr. 238.) The ALJ explained that the medical evidence from April 2015 to December 2018

does not document any impairment related issues that support plaintiff's stated reason for no

longer being employed after their leave of absence. (Tr. 27, citing Tr. 489-92, 494-97.)

Plaintiff does not challenge the ALJ's assessment that their work history is inconsistent with their subjective symptom testimony. The court finds that the ALJ did not err in considering plaintiff's inconsistent statements regarding their work history. *Tommasetti*, 533 F.3d at 1040 (holding ALJ did not err in relying on claimant's inconsistent statements about work history and capabilities to discount subjective symptom testimony). That finding is supported by substantial evidence and is sufficiently specific to allow the court to meaningfully review the ALJ's reasoning. The ALJ did not err.

***Activities of Daily Living.*** An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal activities of daily living (ADLs). *See* 20 C.F.R. § 404.1529(c)(3)(i). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Plaintiff argues that the ALJ did not identify what activity he found inconsistent with their subjective symptom testimony. According to plaintiff, they testified to minimal daily activities, with depression and anxiety significantly that affected their "ability to maintain personal hygiene, engage in any activity outside the home, socialize with people they do not know, and sustain focus and concentration." (Pl.'s Br. at 10.) Their "progress in self-esteem, self-advocacy, and boundary setting with family," in plaintiff's view, is not substantial evidence that

supports the ALJ's conclusion that plaintiff is able to sustain fulltime competitive employment. The court disagrees.

The ALJ discounted plaintiff's testimony because their activities of daily living were inconsistent with their allegations of debilitating physical and mental health symptoms. (Tr. 26-27.) The ALJ acknowledged that in September 2022, plaintiff's second function report stated that they "were 'terrified to leave' the trailer they were living in." (Tr. 26, quoting Tr. 317.) Even so, the ALJ explained that this statement was made when plaintiff was getting out of a relationship and was living on their partner's family property. (Tr. 26-27, citing Tr. 1038-40.) The ALJ cited therapy treatment notes from September 2022 to February 2023 where plaintiff reported they had moved to a better housing situation and were going on several social outings including two concerts. (Tr. 27, citing Tr. 1018-23, 1080, 1083, 1134.) And in plaintiff's most recent mental health treatment notes from August 2023, plaintiff conveyed that one of their "measurable objectives" was to increase their ability to complete at least one task outside the home per day. (Tr. 27, citing Tr. 1230.) Based on that treatment note, the ALJ found that plaintiff was successfully completing tasks outside the home three to four days per week. (Tr. 27, citing Tr. 1230.) The ALJ's finding that plaintiff's subjective symptom testimony about their mental impairments was inconsistent with their activities of daily living is supported by substantial evidence and a reasonable interpretation of the record. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." (quotation omitted)).

***Migraines Improved with Treatment.*** The ALJ also found that plaintiff's migraine symptoms improved with conservative treatment when concluding that their symptom testimony

Page 11 – OPINION AND ORDER
*Alyssa M. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-01520-AR

overstated their limitations. (Tr. 25-26.) Plaintiff argues that the record "fails to support the

ALJ's conclusion that their migraines improved with treatment. (Pl.'s Br. at 16.) Also contended

by plaintiff is that they "engaged in regular treatment for ongoing migraines, including

medication management and acupuncture" and that the ALJ erred in discounting their testimony

because they did not seek out more aggressive migraine treatment. (*Id.*)

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by

evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161

(9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment,

that improvement is "an important indicator of the intensity and persistence of . . .

symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867,

876 (9th Cir. 2017) (noting "evidence of medical treatment successfully relieving symptoms can

undermine a claim of disability"). Symptom improvement, however, must be weighed within the

context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.

2001).

Here, regarding plaintiff's migraine symptoms, the ALJ relied on treatments notes from

2010 to 2022 documenting conservative treatment, gaps in treatment, and overall improvement

with treatment. (Tr. 25-26.) Although plaintiff has a long history of migraine headache disorder,

and was diagnosed in 2006 and 2009, the ALJ explained that there is no evidence of treatment

for migraines again until December 2014, when plaintiff described their headaches as

"incapacitating," unilateral, with aura, nausea, and vomiting once per week. (Tr. 25, citing Tr.

519-24.) The ALJ found this description inconsistent with their hearing testimony about how

often they had migraines during that same time. (Tr. 25.)

In December 2014, Gail Hacker, M.D., prescribed Maxalt as an abortive medication and treatment notes show that a prophylactic medication would be considered if plaintiff's migraines persisted with four months of treatment on Maxalt. (Tr. 25, citing Tr. 522.) The ALJ explained that at plaintiff's follow-up appointments, there was no discussion of migraine medication management. (*See* Tr. 502-517.) The ALJ explained that in March 2015, Dr. Hacker prescribed plaintiff amitriptyline which provided good results—plaintiff reported having no headaches or occasionally once per week—and plaintiff did not seek additional migraine treatment until December 2018 when they re-established care with Jessica Criser, NP. (Tr. 25, citing Tr. 498-500; Tr. 26, citing Tr. 489-92.)

Although plaintiff's first gap in treatment from 2009 to 2014 is explained by plaintiff's lack of insurance, there is the second gap in treatment from 2014 to 2018. (Tr. 56.) In December 2018, plaintiff reported that they were solely using over-the-counter medications to treat their migraines during that second gap. Even though plaintiff reported in the next month that they experienced "migraine headaches most days [without] aura," there was no discussion of headaches, plaintiff denied having headache symptoms, and no migraine medication was prescribed in the following months. (Tr. 26, citing Tr. 485-488, 462-484). The ALJ's finding that a significant gap in plaintiff's migraine treatment from 2014 to 2018 occurred is supported by substantial evidence and is an appropriate basis on which to discount plaintiff's subjective symptom testimony. Based on the four-year absence of treatment, the ALJ could reasonably conclude that plaintiff's subjective symptoms were not as disabling as alleged. *Molina*, 674 F.3d

at 1112 (ALJ may discount claimant's testimony based on "unexplained or inadequately explained failure to seek treatment") (citation modified).

The ALJ also discussed plaintiff's acupuncture treatment history. In 2019, plaintiff's acupuncture decreased the frequency and severity of their migraine headaches. Plaintiff sought a new referral for acupuncture in June 2020, because they found acupuncture to be helpful in alleviating their symptoms. (Tr. 26, citing Tr. 459.) At this referral appointment, even though plaintiff reported experiencing migraines about once a week with photophobia, sensitivity to odors, vomiting, and nausea, plaintiff had not sought treatment in many months and denied changes in cognition or mentation. (Tr. 26.) The ALJ found that the frequency and duration of plaintiff's migraines is inconsistent with their hearing testimony where they testified that their migraines had progressively worsened since their onset date. (Tr. 26.)

Next, the ALJ discussed how plaintiff engaged in physical therapy for headaches and cervicalgia after their vertebral artery dissection. (Tr. 26, citing 577-83, 596-98.) During that time, plaintiff was using over-the-counter medication to treat their migraines. The ALJ acknowledged that plaintiff reported that they continued to have severe headaches about once a month, and that they engaged in one physical therapy appointment despite having a migraine and nausea. (Tr. 26, citing Tr. 475.). The ALJ explained that "per neurology, plaintiff had an excellent response to physical therapy in reducing headache frequency to about once a week with intensity being much less" (Tr. 26, citing Tr. 620-26 (citation modified); in June 2022, plaintiff alleged near constant migraine symptoms and requested a daily maintenance medication, but they "did not trial topiramate as prescribed and continued to use only over the counter

medication" (Tr. 26, citing Tr. 758-62); eventually amitriptyline was prescribed, but there was no discussion in follow-up appointments regarding its efficacy, and that plaintiff did not report migraine headaches at their acupuncture appointments (Tr. 26, citing Tr. 753-56, 994, 997-99, 664-69, 686-89, 692). The ALJ concluded "at no point was there a prolonged effort to trial preventative medication aside from amitriptyline . . . and there was no discussion of other treatment options such as a botulinum toxin or other injectables." (Tr. 26.) The ALJ's discussion of the medical record is supported by substantial evidence.

All said, the record reflects that the ALJ reasonably could conclude that plaintiff's ability to obtain relief with treatment, inconsistent participation in treatment, and not pursuing more aggressive treatment undermined their complaints of disabling migraines and serve as a specific, clear and convincing reason to discount their testimony. When the record supports more than one rational interpretation, if the ALJ's conclusion is reasonable and supported by substantial evidence, it must be upheld. *Molina*, 674 F.3d at 1111.

**_Inconsistency with Objective Medical Evidence._** In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); *Smartt*, 53 F.4th at 498-99. An ALJ may not, however, discount a claimant's subjective testimony by demanding positive objective medical evidence that fully corroborates each allegation within that subjective testimony. *Smartt*, 53 F.4th at 498-99; *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (affirming ALJ's discounting of subjective claims of disabling pain based on objective medical evidence and daily activities).

The ALJ discussed that, despite plaintiff's left patellofemoral syndrome, they consistently exhibited regular gait, heel-toe and tandem gait, balance, and coordination. (Tr. 25, citing 427, 451, 459, 521, 560, 580, 684, 780, 784-86, 917, 1200.) As for their mental impairments, the ALJ discussed how plaintiff's medical providers seldom observed an anxious or depressed mood, and when it was observed, it was often due to situational stressors. (Tr. 26, citing 411-12, 416-17, 427, 546, 553, 560, 580, 602, 623, 653-54, 713-18, 1018-23.) The ALJ also discussed that when plaintiff was consistent with their medication management and in therapy, they reported that their anxiety decreased when in public, had greater mood stability, and a greater ability to accomplish daily tasks. (Tr. 26, citing 414-19, 462-64, 466-68, 473-75, 479-80, 482-84, 686-89.) Plaintiff does not challenge the ALJ's findings that detail the inconsistencies between the objective medical evidence and plaintiff's symptom testimony.[1] The ALJ's findings on this point are supported by substantial evidence, are a reasonable interpretation of the evidence, and provide a specific, clear and convincing reasons to discount plaintiff's subjective symptom testimony.

In summary, the ALJ provided four reasons, each supported by substantial evidence, to support his findings. Those reasons, especially in combination, amount to specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony.

## C.    *Medical Opinion Evidence*

Plaintiff challenges the ALJ's consideration of the medical opinions of Kelsey Pemberton, LCSW, plaintiff's therapist. The regulations require ALJs to evaluate the

---

[1]     Plaintiff also does not argue how the ALJ's subjective symptom finding would be different had the ALJ found his fibromyalgia a medically determinable impairment.

Page 16 – OPINION AND ORDER
*Alyssa M. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-01520-AR

supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c(c). ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

On December 15, 2022, Kelsey Pemberton, LCSW, submitted a treating source form supporting plaintiff's disability claim. (Tr. 896-99.) The ALJ found Pemberton's form unpersuasive, noting that Pemberton is not an acceptable medical source, her opined limitations are not consistent with the medical record, and that "while Pemberton provides some explanation, it is mostly citation to subjective reports from [plaintiff.]" (Tr. 29.) The ALJ's conclusions are supported by substantial evidence.

Plaintiff challenges the ALJ's evaluation of Pemberton's opinion on two primary grounds. First, they argue that the ALJ erred in discounting Pemberton's opinion because she was not an "acceptable medical source." In plaintiff's view, as a qualified mental health practitioner, Pemberton is a licensed medical practitioner under Oregon law, and the ALJ erred in rejecting her opinion because she is not an acceptable medical source. (Pl.'s Br. at 8-9, citing OAR 291-124-1030(2)). The court is not convinced. Even if the ALJ erred in finding that

Pemberton was not an acceptable medical source,[2] the ALJ evaluated Pemberton's medical source opinion about plaintiff's limitations, including its supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c

    Second, plaintiff contends that the ALJ erred by discounting Pemberton's opinion because it relied on plaintiff's self-reports rather than clinical findings. (Tr. 29, citing 901-04.). According to plaintiff, an ALJ must exercise care when rejecting opinions based on self-reports in the mental health context. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness"). But it wasn't that the ALJ rejected Pemberton's opinion *based* on plaintiff's self-reports, but that Pemberton's form is mostly a record of what plaintiff reported to her. (Tr. 29 ("while Pemberton provides some explanation, it is mostly citation to subjective reports from the claimant.")

    The ALJ also concluded that Pemberton's opinion was inconsistent with the objective medical record. An ALJ may also reject an opinion that is "brief, conclusory, and inadequately supported by clinical findings," *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), and the ALJ here did that by discussing how the marked and extreme limitations assessed by Pemberton are inconsistent with other record evidence, noting that

---

[2]    The parties agree that "physical or mental impairments must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. §§ 404.1521, 416.921, and that Pemberton is not an "acceptable medical source" as defined under 20 C.F.R. § 404.1502(a) (defining "acceptable medical source" to include a licensed physician or licensed psychologist). Pemberton's state license only means that she is a "medical source" under social security regulations. 20 C.F.R § 1502(d) (defining "medical source" as individuals licensed "as a healthcare worker by a State").

plaintiff engaged in activities "contrary to the degree of restriction assessed," including progress in "self-esteem, self-advocacy, and boundary setting with family" and (Tr. 29, citing Tr. 728, 1054, 1080, 1083, 1104, 1119, 1160-61, 1176, 1229-1249.) Given that the ALJ addressed these activities when evaluating plaintiff's subjective symptom testimony, this finding is supported by substantial evidence and is sufficiently specific to allow the court to meaningfully review the ALJ's reasoning. *Tommasetti*, 533 F.3d at 1041. As a result, the ALJ did not err.

**D.    *Lay Witness Testimony***

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment" (emphasis in original)). An ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).[3]

Plaintiff asserts that the ALJ erred by not providing an assessment of her friend Kati's

---

[3]    The Commissioner argues that under new regulations governing the evaluation of medical evidence, an ALJ need not provide any reason for rejecting lay witness statements. Although the "germane reasons" standard is under consideration at the Ninth Circuit, absent clear direction, the court will continue to require the ALJs to consider and address lay witness testimony. *See Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025) (overruling germane reasons standard), *vacated and withdrawn*, 133 F.4th 968 (9th Cir. Apr. 7, 2025)); *see also Isaiah L. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02081-AR, 2025 WL 2910190, at *6 (D. Or. Oct. 14, 2025) (concluding that "the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony"); *Karen W. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-00294-AR, 2025 WL 654113, at *8 (D. Or. Feb. 28, 2025) (same, collecting cases)).

function report. But the ALJ did consider Kati's function report, and observed that it had "little

evidentiary value" because most of the responses in the report were not direct observations of

plaintiff and some responses were inconsistent with other information. (Tr. 25; "responses are

inconsistent with other information, such as the claimant being unable to go [to] concerts

because later that year they did in fact attend a concert.")

That explanation is sufficiently germane, and supported by substantial evidence.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision, and this

action is DISMISSED.

DATED: February 17, 2026.


_____
JEFF ARMISTEAD
United States Magistrate Judge